**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01279-MSK

**TERRY W. PACHECO,**

      Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

      Defendant.[1]

**OPINION and ORDER**

**THIS MATTER** comes before the Court on Plaintiff Terry W. Pacheco's appeal of the Commissioner of Social Security's final decision denying his application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33, and Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83c. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.    Jurisdiction**

Mr. Pacheco filed claims for disability insurance benefits pursuant to Title II and supplemental security income pursuant to Title XVI. He originally asserted that his disability began on November 30, 2005. On advice of counsel, he modified this date to January 5, 2007. After his claims were initially denied, Mr. Pacheco filed a written request for a hearing before an

---

[1] At the time Mr. Pacheco filed his appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commissioner of Social Security, effective February 14, 2013.

Administrative Law Judge ("ALJ").  This request was granted and a hearing was held on August 13, 2008.

After the hearing, the ALJ issued a decision with the following findings: (1) Mr. Pacheco met the insured status requirements of the Social Security Act through June 30, 2010; (2) he had not engaged in substantial gainful activity since January 5, 2007; (3) he had two severe impairments: chronic obstructive pulmonary disease and obesity; (4) neither of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Mr. Pacheco had the Residual Functional Capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) [2] with occasional bending, squatting, kneeling, and climbing, no temperature extremes and minimal exposure to pulmonary irritants; (6) Mr. Pacheco was not disabled because he was able to perform his past relevant work as a computer technician.

The Appeals Council granted Mr. Pacheco's request for review of the ALJ's decision, directing the ALJ to address six issues on remand.  A second hearing was held on June 8, 2010. The ALJ then issued a second decision that specifically addressed each of the six issues outlined by the Appeals Council, but did not integrate the supplemental analysis into the prior opinion. [3]

---

[2] Except as noted herein, all references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition.  Hereafter, the Court will only cite the pertinent Title II regulations governing disability insurance benefits, found at 20 C.F.R. Part 404.  The corresponding regulations governing supplemental security income under Title XVI, which are substantively the same, are found at 20 C.F.R. Part 416.

[3] **1. Give further consideration to the treating source opinion pursuant to the provision Of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p and 96-Sp, and explain the weight given to such opinion evidence. As appropriate, the Administrative Law Judge may request the treating source to provide additional evidence and/or further clarification of the opinions and medical source statement about what the claimant can still do despite the impairments (20 CFR 404.1512 a 416.912).**

In the previous decision, the undersigned was pointing out that Dr. Chen's opinions were

internally inconsistent. In other words, that his opinions were not consistent with each other or his treating records. Therefore, his "opinions" were unsupported and contradictory and not given any weight. For instance, in November of 2006, the claimant was employed at the substantial gainful activity level; nonetheless, Dr. Chen opined that the claimant was unable to work. During that same time frame, correspondence from Dr. Chen associated with a referral to Dr. Timms for evaluation of the claimant's polyarthralgia indicates that the claimant's physical examinations were unremarkable (21F/8). Six months later, Dr. Chen wrote that he was no longer caring for the claimant, but that he did not believe that the claimant could do any full time compensative work and was "very disabled" (l7F/l). The undersigned cannot give weight to this opinion, as Dr. Chen has given an opinion that is reserved solely for the commissioner. The undersigned at best can give little weight to the opinions espoused by Dr. Chen when all the records are taken into consideration. The undersigned did give weight to Dr. Chen's treating records, meaning the progress notes, as they provide the most insight into the claimant's conditions.

## 2. Evaluate the other source opinion pursuant to 20 CFR 404.1513(d), 416.913(d), and Social Security Ruling 06-03p.

The only "other" opinion evidence was that provided by Mr. Medina. In addition to Mr. Medina's opinion that the claimant could not work in any capacity for gainful employment, he further opined that the claimant's conditions would exceed 12 months in duration and that he could not do any full time competitive work (18F). The undersigned reviewed and determined to give no weight to the opinions rendered by Mr. Medina. First, whether the claimant can do competitive work is an opinion that is within the sole purview of the Commissioner. Secondly, Mr. Medina, as a physician's assistant, is not an acceptable medical source. Thirdly, Mr. Medina's progress notes rely heavily on claimant's self-reports. For example, he assessed the claimant with Lupus and hypoxia on the first visit with no review of records or objective medical findings. Over the course of months, a variety of diagnoses pepper the records including Lupus, chronic pain syndrome, polyarthralgia, etc. Other than an occasional note indicating the claimant ambulated slowly or he complained of pain with movement, there is little to support the noted diagnoses. Even the claimant questioned his diagnoses, for example, in February of 2008, the claimant wanted to know whether or not he actually had Lupus, as Dr. Chen was the only provider to tell him that he had it. The claimant also stated that he did not need oxygen 24 hours a day. Finally, even an associated physician questioned the claimant's diagnoses. On April 9, 2009, Kjell Benson, M.D. noted that the claimant presented complaining of whole body aches and pains in his joints and sides, esophagus and muscles. Dr. Benson noted that the claimant used continuous oxygen but the claimant did not know why. Dr. Benson recommended that pulmonary function and blood gas studies be done to determine if the claimant was in fact hypoxic. Dr. Benson also noted that the diagnosis of lupus was questionable and needed to be confirmed (31F/16). Unfortunately, the needed objective tests and studies were not performed or consulted to definitively diagnose the claimant. Mr. Medina was simply prescribing treatment based on subjective medical complaints.

Mr. Medina completed a pulmonary impairment questionnaire in May of 2010 and provided a narrative report (33F, 34F). The undersigned rejects these opinions for the same reasons he rejected Mr. Medina's earlier opinions as stated above. There are no functional evaluations included in the treatment records. There are no notes or observations about what the claimant

3

can and cannot do. It is unclear from the record how this non-acceptable medical source arrived at the conclusions that he did. The undersigned gives no weight to his opinions as they are not supported by objective medical testing or studies, etc.

**3. Further evaluate the claimant's polyarthralgia.**

As noted above, the medical records are peppered with diagnoses. One of the diagnoses is polyarthralgia. Literally, polyarthralgia means pain in several joints. Mr. Medina's records refer to claimant's pain complaints with a variety of diagnoses including chronic pain syndrome, arthritis and polyarthralgia. Dr. Chen ordered a test for sedimentation rate, which was performed in December of 2006 (7F/23). The claimant's results were 37, which are elevated compared to the normal reference range of 0-15. Subsequent testing showed the claimant's sedimentation rate as 30 and 28 (7F/4, 31F/26, 32F/20). While still elevated, sedimentation rate alone only indicates inflammation. While increased inflammation is generally present with such conditions as arthritis, it alone is not the basis for a diagnosis of arthritis. The claimant was repeatedly referred to Patrick Timms, M.D., a rheumatologist, but failed to follow through and schedule appointments or appear for appointments that were scheduled. Ultimately, over the course of years, the claimant saw Dr. Timms three times.

The claimant saw Dr. Timms for the first time in June of 2007 and was supposed to return for follow-up in two months. The claimant did not return until November of 2008. The claimant was examined and Dr. Timms requested follow-up in two months. The claimant did not return until June of 2009. Again, the claimant failed to appear for his follow-up appointment in August, at which time, Dr. Timms withdrew from providing any further care to the claimant. Dr. Timms' records indicate that the claimant tested negative for rheumatoid arthritis. X-rays revealed only slight degenerative changes in the knees. X-rays of his hands were normal. An MRI of claimant's spine showed no evidence of significant abnormality. Minor disc irregularities and desiccation were noted but there were no signs of disc herniation or nerve impingement. The claimant's x-rays indicated no joint disfigurement or erosion - typically present with invasive arthritic disease processes. Dr. Timms' characterized the sedimentation rate of 28 as mildly elevated. Dr. Timms' impression was that the claimant had polyarticular inflammatory arthritis. Unfortunately, Dr. Timms opportunities to examine, evaluate and treat the claimant were few. Likewise, his records provide little insight into the functional capacity of the claimant. Without any evidence of the severity of the arthritis and the effects on the claimant's ability to function, if any, the undersigned was compelled to find that the condition was a non-severe impairment (3F, 35F).

**4. Obtain additional evidence concerning the claimant's depression and anxiety in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.15 12- 1513 and 416.912-913). The additional evidence may include, if warranted and available, a consultative mental status examination and medical source statements about what the claimant can still do despite the impairment.**

Regarding the claimant's alleged depression and anxiety, there is very little in the record to support the diagnoses and/or to assess limitations, if any, arising there from. Mr. Medina, the non-acceptable medical source, occasionally assessed the claimant with depression often with no symptoms or outward manifestations noted in the record. In November of 2007, Mr. Medina

4

assessed the claimant with anxiety, based solely on claimant's self-reports, and indicated that he was going to refer the claimant to mental health (20F/18). Mental health records are scant. However, apparently the claimant was treated with Wellbutrin in December of 2007. The claimant reported that the medication was causing him to experience paranoia, so he let the prescription expire and the symptoms resolved. The claimant was seen by Gregory Ceasar, M.D., in April of 2008, for 50 minutes. He noted that the claimant had missed therapy and psychiatric appointments due to lack of transportation. Ultimately, Dr. Ceasar agreed with a working diagnosis of depressive disorder not otherwise substantiated and prescribed Lexapro, trazadone and individual therapy (19F). There are no records establishing that the claimant followed through with individual therapy.

A psychiatric/psychological impairment questionnaire was completed by Mr. Medina in February of 2009. A substantial number of clinical findings were checked on the questionnaire. In addition, many abilities were checked off as moderately limited to markedly limited. For example, moderate limitations included the ability to carry out instructions; the ability to maintain attention, concentration, persistence and pace; etc. The claimant was also noted to be markedly limited in the ability to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. As noted above, Mr. Medina is a physician's assistant and not noted to be a professional in the field of psychology. The form was signed off by J. Wheeler, M.D. (26F). The undersigned gives no weight to this opinion for multiple reasons. First, we have no indication of who Dr. Wheeler is, whether he knew the claimant, or much less whether he had a treating relationship with the claimant. And as for Mr. Medina, again, he is not an acceptable medical source and his opinions are further rejected based on all the reasons cited above.

In October of 2009, subsequent to the hearing, the claimant apparently went through an intake assessment session at SLV Comprehensive Community Health Mental Health Center. However, the intake form is unsigned by the claimant or interviewer and it appears that one appointment was set up for which the claimant never returned (36F).

The undersigned determined that based on the evidence of record, the alleged mental impairments were not severe and therefore a consultative mental status examination or medical source statements about what the claimant can still do despite the (alleged) impairment was not necessary. The records do not support the findings of anxiety and depression as diagnosed by the non-acceptable medical source opinion of Mr. Medina. Without reliable objective clinical support for a diagnosis, it cannot be severe.

5. **Further, if necessary, obtain evidence from a medical expert to clarify the nature and severity of the claimant's impairment (20 CFR 404.1527(1) and 416.927(1) and Social Security Ruling 96-6p).**

The undersigned, after reviewing all of the evidence of record, including that which was recently submitted, does not find engaging a medical expert to be necessary.

The only change to the findings in the first opinion was that Mr. Pacheco was able to perform not only his past job as a computer technician, but was also able to perform other jobs, including label pinker, document preparer and call out operator.

The Appeals Council denied Mr. Pacheco's request for review of the ALJ's second decision. Consequently, the ALJ's second decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Mr. Pacheco's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Issues Presented

Mr. Pacheco raises two challenges to the Commissioner's decision: (1) that substantial evidence does not support the ALJ's Step 2 findings that Mr. Pacheco's polyarthralgia and

---

6. **If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00- 4p).**

    After careful consideration of the expanded record, the undersigned determined that the claimant still has the residual functional capacity to perform sedentary work as defined in 20 CFR 404-1567(a) and 416.967(a) with occasional bending, squatting, kneeling and climbing; no exposure to temperature extremes and minimal exposure to pulmonary irritants.

mental impairments were not severe; and (2) that the ALJ did not correctly evaluate the treating physician's opinion.

### III. Material Facts

Mr. Pacheco was 38 years old at the time of the alleged onset of his disability on January 5, 2007. As of December 31, 2011, the date he last met the insured status requirements under the Act, Mr. Pacheco was 44 years old. Mr. Pacheco received a GED and attended some college courses but did not obtain a college degree. He contends that he can no longer work because of his constant need for supplemental oxygen, as well as knee and low back pain and insomnia.

Mr. Pacheco was diagnosed as suffering from arthritis by Dr. Chen, Dr. Timms and Dr. Striebich. Dr. Chen began treating Mr. Pacheco in 2005. According to treatment records, in 2006 and 2007 Mr. Pacheco had tenderness and effusions in both knees, which Dr. Chen associated with both arthritis and ligament damage. Dr. Chen also frequently observed that Mr. Pacheco had back pain, hypoxemia and abdominal pain. Dr. Chen diagnosed Mr. Pacheco with arthritis and other conditions including chronic obstructive pulmonary disease.

Dr. Chen offered several opinions on Mr. Pacheco's functional capabilities. In June 2007, Dr. Chen wrote that Mr. Pacheco exhibited knee pain associated with arthritis, abdominal pain associated with esophageal dysmotility and reflux disease, and fatigue caused by hypoxemia that contributed to the deterioration of Mr. Pacheco's overall condition and prevented him from working. Dr. Chen opined that walking more than ten to twenty feet would result in both dyspnea and excruciating pain in Mr. Pacheco's knees. In July 2008, Dr. Chen opined that, due to chronic obstructive pulmonary disease, Mr. Pachecho was limited to sitting for four hours and standing or walking for one hour in an eight hour day, would need breaks of ten to fifteen minutes every hour and would miss at least three days of work per month.

Dr. Timms examined Mr. Pacheco in June 2007, November 2008 and June 2009. Although x-rays taken in June 2007 indicated only slight degenerative changes in Mr. Pacheco's knees and no changes in his hand, Dr. Timms noted that Mr. Pacheco had tenderness, fullness or swelling and synovitis in his knees, wrists and hands that caused at least some amount of pain. These observations were corroborated by Dr. Striebich, who noted in March 2011 that Mr. Pacheco had tenderness and fullness in several joints. Blood tests performed in January 2009, June 2009, June 2010 and March 2011 indicated that Mr. Pacheco had an elevated sedimentation rate. Similarly, blood tests from November 2008 and March 2011 indicated that Mr. Pacheco had an elevated C-reactive protein level.

Mr. Pacheco was diagnosed as suffering from depression by Mr. Medina, a physician's assistant who treated Mr. Pacheco beginning in February 2007 and by Dr. Ceasar, who treated Mr. Pacheco in April 2008. Mr. Medina noted that Mr. Pacheco experienced depression or anxiety in July, October and November 2007, as well as February 2008. There were no other opinions in the record, medical or otherwise, that contradicted these diagnoses.

Mr. Medina also opined as to the functional effects of Mr. Pacheco's anxiety and depression in a 2009 Psychiatric/Psychological Impairment Questionnaire, which was also signed by Dr. Wheeler, a family care physician who practiced with Mr. Medina. According to the Psychiatric/Psychological Impairment Questionnaire however, Mr. Pacheco's anxiety and depression were correlated with poor memory, mood and sleep disturbance, substance dependence, recurrent panic attacks, difficulty thinking and concentrating, suicidal ideation, anger and decreased energy. Functional limitations included mild to moderate limitations in understanding and memory, mild to marked limitations in concentration and persistence, mild to moderate limitations in social interaction, and moderate to marked limitations in adaptation.

**IV.     Standard of Review**

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than preponderance. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 F.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

Step 2 of the sequential disability evaluation analysis requires the ALJ to consider the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment or combination of impairments is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). Although the existence of a condition or ailment alone is not sufficient, a claimant need only make a *de minimis* showing of impairment to satisfy the requirements of Step 2. *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004) (*citing Bowen v. Yuckert*, 482 U.S. 137, 158, 107 S.Ct. 2287 (1987)). A Step 2 finding is based on medical evidence alone, and does not include consideration of evidence relating to age, education and work experience. SSR 85-28; *Williams v. Bowen*, 844 F.2d 748 (10th Cir. 1988); 20 C.F.R. § 404.1508 ([a] physical or mental impairment must be established by medical evidence consisting of signs, symptoms and laboratory findings, not only by your statement of symptoms).

The ALJ is required to consider the medical opinions in the record, along with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b). When evaluating medical opinions, a treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); 20 C.F.R. § 404.1527(c). Having considered these factors, an ALJ must give good reasons for the weight assigned to a treating source's opinion. 20 C.F.R. § 404.1517(c)(2). These reasons must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301. Although the ALJ is not required to explicitly discuss all the factors outlined in 20 C.F.R. § 404.1527, the ALJ must discuss not just evidence that supports the decision, but also "uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citation omitted). "An ALJ is not entitled to pick and choose through an uncontradicted

medical opinion, taking only the parts that are favorable to a finding of nondisability." *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007) (citations omitted).

While medical opinions must come from certain medical sources, like physicians or psychologists, other medical sources, including physician's assistants, may also offer opinions. 20 C.F.R. § 404.1513; SSR 06-03p; *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007). These opinions may reflect "the source's judgment about some of the same issues addressed in medical opinions from 'acceptable medical sources,' including symptoms, diagnosis and prognosis, what the individual can still do despite the impairment(s), and physical and mental restrictions." SSR 06-03p. The opinion of a medical source who is not a physician or psychologist is evaluated using the following: (1) the frequency and length of the treatment relationship; (2) the consistency of the opinion with the record; (3) the degree to which the source presents relevant evidence to support an opinion; (4) the sources qualifications or specialty training; and (5) any other factors that tend to support or refute the opinion. *Id*. Not every factor applies in every case. *Id*.; *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (citations omitted). An ALJ should explain the weight given to opinions from non-acceptable sources in order to allow subsequent reviewers to follow the ALJ's reasoning, particularly when the opinion might have an effect on the outcome of the case. *Id*.

### V.     Discussion

As noted above, the ALJ issued two decisions in this case. The first decision ("Decision") followed the prescribed five-step disability analysis; the second was responsive to specific remands by the Appeals Council. Because no new comprehensive decision was issued, the Court treats the ALJ's second decision as a supplement ("Supplement") to the Decision, and considers them together.

### A. Mr. Pacheco's Polyarthralgia, Anxiety and Depression

The ALJ found that Mr. Pacheco's polyarthralgia, anxiety and depression were not severe impairments. Mr. Pacheco argues that these Step 2 findings were not supported by substantial evidence.

In the Decision, the ALJ did not discuss polyarthralgia at all at Step 2. In the Supplement, the ALJ found that there was no evidence that Mr. Pacheco suffered a severe impairment of polyarthralgia. The ALJ noted that there were several instances in which Mr. Pacheco complained of knee and back pain, but also made reference to several negative test results. The ALJ focused largely on Mr. Pacheco's weight and rejected Mr. Pacheco's subjective complaints of pain, concluding that they were driven by a desire for pain medication.

At Step 2, only a *de minimus* showing of impairment is required to establish a severe impairment. *Langley*, 373 F.3d at 1123. At this step, only medical evidence is relevant at Step 2 to determine the existence of an impairment. SSR 85-28. An impairment or combination of impairments is considered "severe" if it significantly limits one's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521.

The medical evidence in the record reflects diagnoses of arthritis by three treating physicians and blood tests showing elevated levels of sedimentation and C-reactive proteins. Although the etiology was unclear, the diagnosis of some form of arthritis is undisputed. As to the effect of the arthritis, however, the record is more limited. No examining medical source opined or was consulted as to Mr. Pacheco's functional limitations stemming from arthritis. Notes from several physical examinations reflect synovial tenderness, fullness and swelling in multiple joints. Treatment notes show repetitive complaints of pain in Mr. Pacheco's knees, wrists, elbows and hips. Indeed, pain appears to be the most significant impact of Mr.

Pacheco's arthritis. Thus, the question becomes whether pain impaired Mr. Pacheco's ability to work.

Mr. Pacheco admits that there is no medical evidence of severity of pain, but he argues that the record was not sufficiently developed by the ALJ and therefore the matter should be remanded for that purpose. The Court disagrees. Although the ALJ has an obligation to develop the record to resolve an ambiguity, Mr. Pacheco was represented by counsel at the time of both hearings. Mr. Pacheco had the burden of providing adequate evidence to establish severity of Mr. Pacheco's arthritis at Step 2. In addition, if there was any error with regard to pain at this point in the analysis, it was harmless because the evidence was fully discussed in conjunction with the Step 4 analysis.

With regard to mental impairments, the Decision did not address Mr. Pacheco's anxiety or depression at Step 2, and these impairments were only briefly discussed in the Step 4 RFC analysis. The latter analysis was limited to noting that Mr. Pacheco's subjective complaints of depression and statements of suicidal ideation were likely motivated by a desire to obtain disability benefits. The Supplement acknowledges that Mr. Medina diagnosed Mr. Pacheco with an anxiety disorder, but rejects the diagnosis because Mr. Medina was as a physician's assistant, and therefore did not qualify as an accepted medical source. Even though the RFC analysis by Mr. Medina was also signed by Dr. Wheeler, the Supplement disregards it as an opinion of Dr. Wheeler because there was no information in the record as to Dr. Wheeler's treatment of Mr. Pacheco. The Supplement notes that Dr. Ceasar, a psychiatrist, also diagnosed Mr. Pacheco with depression, but suggests that the importance of such diagnosis is reduced because Mr. Pacheco did not pursue follow-up treatment.

Mr. Medina's (and implicitly Dr. Wheeler's) diagnosis of anxiety and Dr. Ceasar's diagnosis of depression are uncontroverted medical evidence. To reject this evidence of impairment at Step 2 was error. In doing so, the ALJ inappropriately substituted his personal judgment for that of medical professionals, including a psychiatrist. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004).

Severity of the impairment is addressed in the psychiatric and psychological impairment questionnaire signed by Mr. Medina and Dr. Wheeler. It shows mental impairments that affect Mr. Pacheco's ability to work. Thus for purposes of Step 2, anxiety and depression should have been recognized as severe impairments.

An error at Step 2, however, can be harmless if there is no showing that it would have resulted in a Step 3 determination of disability under the Listings and if the impairment is fully addressed at Step 4. *See e.g. Martinez v. Apfel*, No. 08-2008, 2008 WL 3410092 (10th Cir. Aug. 13, 2008) (unpublished) (citing *Fischer-Ross v. Barnhart*, 431 F.3d 729, 730, 733-34 (10th Cir. 2005)); *see also Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008). There is no contention, here, that a Listings impairment would have been found at Step 3, so the Court turns to the Step 4 analysis.

At Step 4, neither the Decision nor the Supplement offered much discussion of Mr. Pacheco's mental impairments. The Appeals Council noted the inadequacy in the Decision upon its remand. The Supplement categorically rejected the opinions as to diagnosis and limitations found in the psychiatric and psychological impairment questionnaire signed by Mr. Medina and Dr. Wheeler at Step 4 for the same reasons stated at Step 2: 1) Mr. Medina was not an acceptable medical source; and 2) there was insufficient information in the record with regard to Dr. Wheeler's involvement with Mr. Pacheco to consider his opinion as that of a treating physician.

Medical opinions' are "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions.'" *Fuller v. Astrue*, No. 10-2037-JWL, 2011 WL 209527, at *6 (10th Cir. Jan. 21, 2011) (unpublished) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)).  "Medical opinions may not be ignored and, unless a treating source opinion is given controlling weight, all medical opinions will be evaluated by the Commissioner in accordance with factors contained in the regulations." *Id*. (citing 20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling (SSR) 96-5p).  As noted earlier, those factors are set out in 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6)).

The Supplement is correct that the regulations do not treat Mr. Medina as an acceptable medical source and thus his opinion cannot be regarded as a medical opinion of a treating doctor. 20 C.F.R. § 404.1513(a).  However, categorical rejection of the opinion on that basis was error. Mr. Medina would be characterized as an "other source" under 20 C.F.R. § 404.1513(d) and SSR 06-03p.  Opinions like Mr. Medina's must be evaluated using the same factors as that used to evaluate the opinion of an acceptable medical source.  SSR 06-03p.  There is no substantive analysis of the required factors with regard to this opinion.

In addition, it was error to reject the opinions in the psychiatric and psychological impairment questionnaire simply because the ALJ did not know about the treatment relationship between Mr. Pacheco and Dr. Wheeler.  Presumably, the ALJ thought that if Dr. Wheeler was not a treating physician, then the opinion did not need to be considered.  Indeed, that is not the case as described above.  And if Dr. Wheeler was, in fact, a treating physician, his opinion should have been given controlling weight or sufficient reasons given for not doing so.  To the

extent that the ALJ was uncertain about whether Dr. Wheeler actually treated Mr. Pacheco, the ALJ could and should have sought more information.  At the time the Decision and Supplement were issued, 20 C.F.R. § 404.1512(e) required an ALJ to seek additional evidence or clarification from a medical source when faced with a conflict or ambiguity that required resolution. [4]

### B. Dr. Chen's Opinions

In light of the foregoing discussion, it is not necessary to address the sufficiency of the analysis of Dr. Chen's opinions in either the Decision or Supplement.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 30th day of September, 2013.

**BY THE COURT:**

_Marcia S. Krieger_

Marcia S. Krieger
United States District Judge

---

[4]  The Court notes that § 404.1512(e) was changed in 2012, eliminating that explicit requirement. According to the Commissioner, this rule was changed to give ALJ's more "flexibility in determining how best to obtain information."  How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651-01 (Feb. 23, 2012) (to be codified at 20 C.F.R. § 404.1512). Although the Commissioner eliminated the specific rule, he indicated that "there are times when we would still expect adjudicators to re-contact a person's medical source first; that is, when re-contact is the most effective and efficient way to obtain the information needed to resolve an inconsistency or insufficiency in the evidence received from that source." *Id.*